The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: October 28, 2024

**No. S-1-SC-39641**

**KYLE SALAS, VICKY ISLAS, STEPHANIE ORTIZ, ALBERTO ROYBAL, RHONDA D. SANCHEZ, JESSICA SIETERS MARTINEZ, and LORI SIETERS, on behalf of themselves and all others similarly situated,**

  Plaintiffs-Respondents,

v.

**GUADALUPE CREDIT UNION,**

  Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Francis J. Mathew, District Judge**

Sutin, Thayer & Browne, P.C.
Stevan Douglas Looney
Christina M. Looney
Albuquerque, NM

for Petitioner

Humphreys Wallace Humphreys, P.C.
Robert David Humphreys
Lucius James Wallace
Santa Fe, NM

Treinen Law Office, P.C.

Rob Treinen

Albuquerque, NM

for Respondents

**OPINION**

**VIGIL, Justice.**

{1} Plaintiffs, Kyle Salas and others, allege that Guadalupe Credit Union (Guadalupe) pursued debt collection lawsuits against them through employees that were not authorized to practice law. Plaintiffs' complaint in the district court alleges Guadalupe's actions constitute the unauthorized practice of law under NMSA 1978, § 36-2-28.1 (2011), and unfair trade practices under the Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -26 (1967, amended through 2019) (UPA). The district court agreed with Guadalupe's arguments challenging Plaintiffs' standing and granted Guadalupe's motion to dismiss Plaintiffs' complaint. The Court of Appeals reversed and reinstated Plaintiffs' complaint in its entirety. *Salas v. Guadalupe Credit Union*, A-1-CA-39021, mem. op. ¶¶ 4, 14 (N.M. Ct. App. Oct. 11, 2022) (nonprecedential).

{2} We granted Guadalupe's petition for certiorari and address two questions: First, have Plaintiffs sufficiently alleged that Guadalupe engaged in the unauthorized practice of law? Second, based on these allegations, do Plaintiffs have standing to bring claims against Guadalupe under Section 36-2-28.1 and the UPA? We answer yes to both questions.

{3} As we explain in this opinion, Plaintiffs sufficiently allege that Guadalupe engaged in the unauthorized practice of law in violation of Rule 2-107(B)(3) NMRA,

Rule 24-101(A) NMRA, and NMSA 1978, Section 36-2-27 (1999), by initiating and pursuing collection actions in magistrate court through employees not authorized to practice law. Based on these allegations, Plaintiffs have standing under Section 36-2-28.1 and the UPA to sue for injuries arising from Guadalupe's unauthorized practice of law and unfair or unconscionable trade practices. We therefore agree with the Court of Appeals that the district court erred by dismissing Plaintiffs' claims. In affirming the Court of Appeals, we clarify that corporations, such as Guadalupe, must appear before our courts through duly licensed counsel unless otherwise authorized by this Court's rules.

## I.      BACKGROUND

{4}      The following facts are taken from Plaintiffs' complaint, which we accept as true for purposes of our review. *See N.M. Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342.

{5}      Guadalupe is a New Mexico corporation and federally insured credit union with "hundreds, if not thousands" of shareholders or members. Plaintiffs are seven current or former members of the credit union who filed suit in their individual capacities and on behalf of similarly situated credit union members as a putative class. Plaintiffs allege that Guadalupe filed and pursued debt collection actions against them in Santa Fe County Magistrate Court. Throughout these collection

2

actions, Guadalupe appeared and acted through employees who were not admitted to practice law in New Mexico. Guadalupe used the existence of the lawsuits to "obtain either payment in full, a payment arrangement, or a judgment against Plaintiffs." Plaintiffs further allege that "[j]udgments obtained by [Guadalupe] were enforced by garnishment or otherwise through the process of the Court." Guadalupe filed and pursued numerous similar collection lawsuits against other unnamed credit union members.

{6} Plaintiffs claim that Guadalupe's conduct violates Rule 2-107(B)(3), which addresses a closely-held corporation's appearance through a nonattorney in magistrate court, and Section 36-2-28.1, which creates a private right of action for "[a] person who suffers a loss of money or other property as a result of the unauthorized practice of law." Section 36-2-28.1(B). Plaintiffs also claim that Guadalupe's conduct amounts to an unfair trade practice or unconscionable trade practice in violation of the UPA. *See* § 57-12-2(D), (E) (defining unfair and unconscionable trade practices); § 57-12-3 (declaring unfair and unconscionable trade practices unlawful). Plaintiffs request monetary and equitable relief.

{7} Guadalupe moved to dismiss Plaintiffs' complaint for failure to state a claim. Guadalupe argued that Section 36-2-27 authorizes a person who is not an attorney to practice law in magistrate court. Guadalupe further argued that Plaintiffs failed to

3

allege facts that would constitute the practice of law because its employees represented only Guadalupe's legal interests. Guadalupe thus characterized itself as a pro se or self-represented litigant. And because both of Plaintiffs' claims, under Section 36-2-28.1 and under the UPA, were based on Plaintiffs' allegation of Guadalupe's unauthorized practice of law, Guadalupe argued the entire complaint should be dismissed.

{8}     After full briefing and a hearing, the district court granted Guadalupe's motion and dismissed Plaintiffs' complaint with prejudice. Although the district court did not fully explain its reasoning, the district court was persuaded to dismiss because "the action complained of is not rendering a service to . . . Plaintiffs. The service that was rendered, if any, was rendered to [Guadalupe], and the persons that were rendering that service were undoubtedly engaged in the practice of law, but with respect to their employer the credit union." The district court also suggested that this Court may need to "revisit" Rule 2-107 and that the Legislature may need "to revisit the statute." We assess that the district court concluded Plaintiffs lacked standing or a cause of action under either Section 36-2-28.1 or the UPA.

{9}     Plaintiffs appealed, and the Court of Appeals reversed the district court. *Salas*, A-1-CA-39021, mem. op. ¶ 14. The Court of Appeals reasoned that Rule 2-107, which allows a closely-held corporation to appear through a nonattorney in

4

magistrate court, limits nonattorney practice under Section 36-2-27, which otherwise prohibits nonattorneys from practicing law except in magistrate court. *See Salas*, A-1-CA-39021, mem. op ¶¶ 6-7. As a result, "a violation of Section 36-2-27 *as limited by Rule 2-107* is actionable under Section 36-2-28.1" as the unauthorized practice of law. *Salas*, A-1-CA-39021, mem. op. ¶ 7. With this clarification, the Court of Appeals held that Plaintiffs could pursue a claim against Guadalupe under Section 36-2-28.1. *Salas*, A-1-CA-39021, mem. op. ¶¶ 7-8. The Court of Appeals also held that Plaintiffs could pursue a claim under the UPA on the theory "that [Guadalupe] at least knowingly made a misleading, false, or deceptive statement—filing unauthorized legal pleadings—in connection with the sale of services—debt servicing and collection." *Id.* ¶ 9.

{10} The Court of Appeals analyzed separately whether the district court erred by dismissing Plaintiffs' claims because Guadalupe's employees had not provided unauthorized legal services to Plaintiffs. *Id.* ¶¶ 10-12. Looking to the plain language of Section 36-2-28.1(B) that "[a] person who suffers a loss . . . may bring an action," the Court of Appeals held that the statute does not require "a predicate representative relationship to create standing to sue for the unlawful practice of law." *Salas*, A-1-CA-39021, mem. op. ¶ 11. The Court of Appeals also reasoned that a UPA claim

was not "limited to claims by the party to whom the legal services were provided." *Id.* ¶ 12.

{11} We granted Guadalupe's petition for a writ of certiorari. Although our reasoning differs in some respects from that of the Court of Appeals, we agree that the district court erred in dismissing Plaintiffs' complaint. We therefore affirm the Court of Appeals in reversing the district court.

## II. STANDARD OF REVIEW

{12} We review de novo the district court's decision to dismiss for failure to state a claim on which relief may be granted. *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917. "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181. We will "accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Delfino*, 2011-NMSC-015, ¶ 9 (internal quotation marks and citation omitted). A motion to dismiss under Rule 1-012(B)(6) should be granted only "when it appears the plaintiff cannot be entitled to relief under any state of facts provable under the claim." *Baldonado v. El Paso Nat. Gas*

6

*Co.*, 2008-NMSC-005, ¶ 6, 143 N.M. 288, 176 P.3d 277 (internal quotation marks and citation omitted).

## III.    DISCUSSION

{13}    Guadalupe advances various challenges to Plaintiffs' Section 36-2-28.1 and UPA claims. Most of these challenges are premised on a single theme: Plaintiffs failed to allege that Guadalupe was engaged in the unauthorized practice of law. We therefore consider whether Plaintiffs sufficiently alleged that Guadalupe engaged in the unauthorized practice of law before addressing Guadalupe's challenges to Plaintiffs' standing under Section 36-2-28.1 and the UPA.

## A.    Guadalupe Engaged in the Unauthorized Practice of Law

{14}    Guadalupe asserts that, as a matter of law, it did not engage in the unauthorized practice of law. Guadalupe advances two main theories to support this assertion: first, Guadalupe was authorized to appear through its nonattorney employees in magistrate court under Section 36-2-27; second, even if this appearance was unauthorized, Guadalupe did not otherwise engage in the practice of law. We discuss each of these theories in turn.

## 1.    Section 36-2-27 does not authorize nonattorneys to practice law in magistrate court

{15}    Guadalupe asserts that Section 36-2-27 authorizes nonattorneys to practice law in magistrate court, and thus reasons that Plaintiffs cannot prove that Guadalupe

7

engaged in the unauthorized practice of law. Section 36-2-27 provides, in relevant part, "No person shall practice law in a court of this state, *except a magistrate court*, nor shall a person commence, conduct or defend an action or proceeding unless he has been granted a certificate of admission to the bar." (Emphasis added.) Guadalupe suggests that the plain language of the phrase "except magistrate court" creates an exception to the general rule that only licensed attorneys may practice law in New Mexico, and that failure to recognize this magistrate-court exception renders the phrase superfluous and improperly invades legislative powers.

{16} Guadalupe's argument betrays a fundamental understanding of the constitutional relationship between this Court and the Legislature with respect to the regulation of the practice of law. Guadalupe also ignores our well-settled and directly controlling precedent in *State v. Rivera*, 2012-NMSC-003, 268 P.3d 40, and *State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.*, 1973-NMSC-087, 85 N.M. 521, 514 P.2d 40.

{17} The New Mexico Constitution grants this Court the exclusive power to regulate the practice of law. N.M. Const. art. VI, § 3 (granting this Court power of "superintending control over all inferior courts"); *Application of Sedillo*, 1959-NMSC-095, ¶ 13, 66 N.M. 267, 347 P.2d 162 (recognizing "the power to integrate the bar as purely a judicial function"); *Norvell*, 1973-NMSC-087, ¶ 26 ("[T]he

8

regulation of the practice of law is the exclusive constitutional prerogative of this [C]ourt."). Thus, Section 36-2-27 is invalid to the extent that the statute conflicts with this Court's rules regulating the practice of law. *See, e.g.*, *Sedillo*, 1959-NMSC-095, ¶¶ 7-9, 16 (invalidating as unconstitutional a statute which conflicted with the Court's rules regarding qualifications of a person seeking to practice law); *Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005-NMSC-032, ¶ 5, 138 N.M. 398, 120 P.3d 820 (explaining that this Court will use its power of superintending control to revoke or amend a statute affecting court pleading, practice, or procedure if the statute conflicts with an existing Court rule).

{18}     Guadalupe's proffered reading of Section 36-2-27 conflicts with this Court's rules regulating the practice of law. Rule 24-101(A) of the Rules Governing the New Mexico Bar provides, "Except as otherwise provided by rules adopted by the Supreme Court, no person shall practice law in this state . . . unless that person is an active member of the State Bar of New Mexico." *See also* Rule 15-201(A) NMRA ("Unless otherwise ordered by the Supreme Court, no person may practice law in New Mexico . . . until that person has qualified and met the requirements of these rules to the satisfaction of the Supreme Court."). Thus, only attorneys duly admitted to the state bar may practice law in New Mexico, with limited exceptions provided as expressly recognized by the rules of this Court. This rule protects the public and

9

the administration of justice by ensuring that those who practice law are held to the high standards of competency, ethics, and professionalism demanded of members of our state bar. *See State Bar v. Guardian Abstract & Title Co.*, 1978-NMSC-016, ¶ 20, 91 N.M. 434, 575 P.2d 943 ("The prime purpose of licensing attorneys and in making them the exclusive practitioners in their field is to protect the public from the evils occasioned by unqualified persons performing legal services.").

{19}    In fact, we previously rejected Guadalupe's reading of Section 36-2-27 in *Rivera*. In *Rivera*, we considered whether Section 36-2-27 authorized a student who had not been approved for clinical practice to represent the state in a magistrate court criminal trial. 2012-NMSC-003, ¶¶ 3, 7-15. While we acknowledged that Section 36-2-27 seemingly carves out a magistrate-court exception to the unauthorized practice of law, we nevertheless emphasized the bedrock principle that "the ultimate authority 'to regulate all pleading, practice and procedure' resides in the judicial branch of government, and specifically in the Supreme Court." *Rivera*, 2012-NMSC-003, ¶ 7 (citation omitted). Consequently, this Court's rules regulating the practice of law supersede any contradictory language in Section 36-2-27. *See Rivera*, 2012-NMSC-003, ¶ 8; *see also, e.g., Sw. Comm. Health Servs. v. Smith*, 1988-NMSC-035, ¶ 6, 107 N.M. 196, 755 P.2d 40 ("Functions of the judiciary which are essential to its constitutional powers cannot be exercised by another branch of the

government in conflict with the judicial branch. . . . [A]ny conflict between [C]ourt rules and statutes that relate to procedure [is] . . . resolved by this Court in favor of the rules."). We further recognized that Rule 24-101(A) limits Section 36-2-27 to the extent that the statute conflicts with the rule. *Rivera*, 2012-NMSC-003, ¶ 9. We emphasized that Rule 24-101(A)'s prohibition against the unauthorized practice of law "applies to *all* courts of this state, without exception." *Rivera*, 2012-NMSC-003, ¶ 9.

{20}     Even prior to Rule 24-101(A) and *Rivera*, we limited Section 36-2-27 by judicial decision in *Norvell*. In *Norvell*, we considered whether a collections agency engaged in the unauthorized practice of law by soliciting collection claims from creditors and pursuing the claims through nonattorneys in magistrate court for a contingency fee. 1973-NMSC-087, ¶¶ 9-13. We held that the magistrate-court language in Section 36-2-27 was an unconstitutional invasion of judicial powers. *Norvell*, 1973-NMSC-087, ¶ 26. But instead of striking the statute, "*Norvell* limited the magistrate court exception in Section 36-2-27 to those few occasions when a non-attorney might appear only 'on a casual and non-recurring basis without the contaminating aspects of solicitation and charging of fees.'" *Rivera*, 2012-NMSC-003, ¶ 11 (quoting *Norvell*, 1973-NMSC-087, ¶ 26). Thus, "*Norvell*, later supplemented by rule, could not be clearer. Only attorneys properly admitted to the

Bar may practice law in any court of this state, subject to those few exceptions provided in our rules." *Rivera*, 2012-NMSC-003, ¶ 12.

{21} *Rivera*'s and *Norvell*'s unmistakable holdings—derived from decades of precedent and Court rules—are fatal to Guadalupe's assertion that Section 36-2-27 authorizes Guadalupe to appear through its nonattorney employees in magistrate court. Only this Court can authorize a person to appear before any court in this state.

{22} On the facts alleged, Guadalupe's appearance through its nonattorney employees was not authorized. Rule 2-107, first promulgated in 1987, authorizes corporations to appear in magistrate court through nonattorneys in two circumstances. Neither of these circumstances is present here. First, a corporation may appear through an officer, director, or general manager when "the corporation . . . is brought into the suit by a writ of garnishment or attachment." Rule 2-107(B)(1)(b). Second, a corporation may appear through an authorized shareholder or member when the corporation's "voting shares or memberships are held by a single shareholder or member or closely knit group of shareholders or members." Rule 2-107(B)(3). Undisputedly, Guadalupe met neither of these circumstances in its collection actions against Plaintiffs.

{23} Guadalupe nevertheless argues that the current (2013) amendments to Rule 2-107 distinguish this appeal from *Norvell* and *Rivera*. According to Guadalupe, the

amended rule permits a corporation to appear through a "shareholder or member" rather than through an "officer or general manager" as provided in the previous version. Rule 2-107(B)(3) (2008). But Guadalupe fails to acknowledge that the rule's threshold requirement for a corporation to appear through a nonattorney remains unchanged. A corporation may appear through a nonattorney only when its "voting shares or memberships are held by a single shareholder or member or closely knit group of shareholders or members." Rule 2-107(B)(3). Plaintiffs have alleged that Guadalupe's "shareholders or members number in the hundreds, if not thousands."

{24}     *Rivera* and *Norvell* thus control this appeal. The magistrate-court language in Section 36-2-27 has been superseded by this Court's rules addressing the unauthorized practice of law. No rule authorizes Guadalupe to appear through a nonattorney in magistrate court. We therefore reject Guadalupe's contention that Section 36-2-27 authorized it to pursue actions in magistrate court through employees who were not admitted to practice law.

**2.     Guadalupe engaged in the practice of law**

{25}     Guadalupe asserts that, even if Section 36-2-27 does not authorize nonattorneys to appear in magistrate court, it did not engage in the practice of law. Guadalupe maintains that it "represented only itself in magistrate court and only by

13

using and filling in the blanks on court-approved forms" and thus characterizes itself as a pro se litigant. We, therefore, consider whether Guadalupe, as a corporation, may represent itself in magistrate court without engaging in the practice of law and whether the actions of Guadalupe's employees constituted the practice of law.

{26} With respect to an individual, it is clear that "[r]epresenting one's self in a legal proceeding does not constitute practicing law." *United States v. Martinez*, 1984-NMSC-072, ¶ 2, 101 N.M. 423, 684 P.2d 509 (holding that a judge could appear and defend himself in federal court without practicing law in violation of the Code of Judicial Conduct); *see also* Rule 2-107(A)(1) (allowing an individual party to appear *for the party's own self*, *i.e.*, *pro se*, in magistrate court). However, Guadalupe's employees did not represent their own interests in the collection actions against Plaintiffs. Instead, the employees filed and pursued the actions on behalf of Guadalupe. Thus, the nonattorney employees were not appearing pro se. *Cf. Chisholm v. Rueckhaus*, 1997-NMCA-112, ¶ 9, 124 N.M. 255, 948 P.2d 707 (holding that a plaintiff "was not functioning pro se" when "he was representing his minor child in a legal capacity and engaged in the practice of law without a license").

{27} Corporations are held to different standards than individuals. As a corporation, Guadalupe cannot represent itself or appear pro se. Instead, a corporation must act through an agent, such as an employee, and that agent can only

14

represent the corporation if they are authorized to practice law. *See Martinez v. Roscoe*, 2001-NMCA-083, ¶ 15, 131 N.M. 137, 33 P.3d 887 (holding that because they "are separate legal entities," the corporation could not appear pro se through its manager, and because its manager "is not a licensed attorney in New Mexico" the corporation could not file pleadings through its manager); *Lee v. Catron*, 2009-NMCA-018, ¶ 5, 145 N.M. 573, 203 P.3d 104 ("One who is not a licensed attorney cannot represent others in court."); *see also Rowland v. Ca. Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."); J.M. Zitter, *Propriety and Effect of Corporation's Appearance Pro Se Through Agent Who Is Not Attorney*, 8 A.L.R.5th 653 § 3[a] (1992) ("[A]n appearance by a corporation through an agent other than a licensed attorney is not ordinarily proper."). As a corporation, Guadalupe can only appear before our courts through duly licensed counsel, except as otherwise expressly authorized by this Court's rules.

{28} Guadalupe also questions whether its employees' conduct amounted to the practice of law, suggesting that its employees merely filled in the blanks on court-approved forms. However, because we accept Plaintiffs' well-pleaded facts as true in reviewing this motion to dismiss, *see Delfino*, 2011-NMSC-015, ¶ 9, we thus consider whether those facts show that Guadalupe engaged in the practice of law.

15

{29}    This Court has repeatedly "declined to define what constitutes the practice of law because of the infinite number of fact situations which may be presented, each of which must be judged according to its own circumstances." *Norvell*, 1973-NMSC-087, ¶ 19; *see also Sparkman v. State Bd. of Bar Exam'rs*, 1967-NMSC-058, ¶ 8, 77 N.M. 551, 425 P.2d 313 ("We do not propose to submit a definition of the practice of law that may be employed to fit all situations and activities. We consider that each case must be examined in the light of its own facts."). Nevertheless, we have identified the following "indicia of the practice of law, insofar as court proceedings are concerned":

> (1) representation of parties before judicial or administrative bodies, (2) preparation of pleadings and other papers incident to actions and special proceedings, (3) management of such action and proceeding, and non-court related activities such as (4) giving legal advice and counsel, (5) rendering a service that requires the use of legal knowledge or skill, [and] (6) preparing instruments and contracts by which legal rights are secured.

*Norvell*, 1973-NMSC-087, ¶ 20. For example, in *Norvell*, we concluded that a collection agency practiced law when it solicited creditors' assignment of claims and pursued the claims for a contingency fee in magistrate court, often through a nonattorney collection manager. *Id.* ¶¶ 9-14, 32. In reaching that conclusion, we clarified that the collection agency was not appearing pro se; rather, the collection agency was practicing law by "rendering a service to others" through its appearances

16

in magistrate court, with "the contaminating aspects of solicitation and charging of fees." *Id.* ¶¶ 26, 31.

**{30}** Our opinion in *Guardian Abstract*, 1978-NMSC-016, is also instructive. In *Guardian Abstract*, we concluded that title companies did not engage in the unauthorized practice of law by using nonattorneys to fill in the blanks in legal instruments drafted by attorneys "where filling in the blanks requires only the use of common knowledge regarding the information to be inserted." *Id.* ¶ 35. However, we emphasized that a licensed attorney is required "when the filling in of the blanks affects substantial legal rights, and if the reasonable protection of such rights requires legal skill and knowledge greater than that possessed by the average citizen." *Id.*

**{31}** We acknowledge that, unlike in *Norvell* and *Guardian Abstract*, Guadalupe used its employees to represent its own interests and not the interests of another. *See Guardian Abstract*, 1978-NMSC-016, ¶¶ 1, 4, 34; *see Norvell*, 1973-NMSC-087, ¶¶ 1, 9-13, 26. To the extent that some employees merely filled in court-approved forms for Guadalupe, the employees may have acted within the scope of permissible conduct. But Plaintiffs have alleged that Guadalupe's employees went far beyond the mere filling in of court-approved forms. Plaintiffs allege that these employees systematically filed and pursued actions in magistrate court for the purpose of

17

recovering money owed by Guadalupe's borrowers. Plaintiffs allege that the employees initiated lawsuits, negotiated and obtained settlement agreements or payment plans, voluntarily dismissed certain lawsuits, failed to prosecute others, and in some cases, obtained default judgments and pursued garnishment actions against Plaintiffs and other credit union members. Plaintiffs' allegations support a reasonable inference that these employees leveraged court proceedings for Guadalupe's benefit and to Plaintiffs' detriment. These allegations, if proven, plainly describe conduct that would qualify as the practice of law. Because no rule of this Court authorized Guadalupe's employees to practice law, Plaintiffs have sufficiently alleged that Guadalupe engaged in the unauthorized practice of law.

**B.     Plaintiffs Have Standing Under Section 36-2-28.1 and the UPA**

{32}     Having rejected Guadalupe's arguments that it did not engage in the unauthorized practice of law, we next consider Guadalupe's challenges to Plaintiffs' standing under Section 36-2-28.1 and the UPA.

{33}     "[S]tanding is a doctrine requiring that the claimant must have a personal stake in the outcome of a case." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 11, 121 N.M. 764, 918 P.2d 350. Generally, standing in our courts is a prudential consideration, not a jurisdictional requirement; however, where, as here, a plaintiff brings suit under a statute, the question of standing implicates subject matter

18

jurisdiction. *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 9 & n.1, 144 N.M. 471, 188 P.3d 1222 (citing *In re Adoption of W.C.K.*, 2000 PA Super 68, ¶ 6, 748 A.2d 223 (Pa. Super. Ct. 2000), *abrogated by In re Nomination of deYoung*, 903 A.2d 1164, 1167-68 & n.5 (Pa. 2006)). This is because "[w]here the Legislature has granted specific persons a cause of action by statute, the statute governs who has standing to sue." *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 8, 150 N.M. 64, 257 P.3d 884. We have explained that our analysis of whether a plaintiff has standing under a statute is similar to our analysis of whether a plaintiff has stated a cause of action under the statute. *See Key*, 1996-NMSC-038, ¶ 11. "[W]hether this Court discusses it as a cause of action or standing, 'both doctrines allow plaintiffs to enforce a right in the courts.'" *Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 8, 453 P.3d 434 (quoting *Key*, 1996-NMSC-038, ¶ 11).

{34} For a plaintiff to acquire standing, the plaintiff must demonstrate an injury in fact traceable to the defendant's conduct that is likely to be redressed by the requested relief. *ACLU,* 2008-NMSC-045, ¶¶ 1, 7, 10; *see also Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 13, 369 P.3d 1046 (recognizing the standing doctrine as including three elements: "'injury in fact, causation, and redressability'" (quoting *ACLU*, 2008-NMSC-045, ¶ 10)). An injury in fact is a direct injury or an

19

imminent threat of injury to the plaintiff as a result of the challenged conduct. *See ACLU,* 2008-NMSC-045, ¶ 11. In addition, when we consider whether a plaintiff has standing to sue under a statute, the plaintiff's interests must be "arguably within the zone of interests to be protected or regulated by the statute." *Key*, 1996-NMSC-038, ¶ 11 (internal quotation marks and citation omitted). "The creation of a private right of action does not automatically confer standing on all plaintiffs," and we use "tools of statutory interpretation, including the zone of interest protected, to determine whether the cause of action confers a right for a particular plaintiff to pursue a particular claim." *Gandydancer*, 2019-NMSC-021, ¶ 15. Our analysis of standing under a statute thus focuses on legislative intent, as "[t]he statute must provide protection against the injury alleged," and the plaintiff's "asserted interests [must] fall within the zone of interest protected." *Id.* ¶¶ 16-17.

{35} We first consider whether Plaintiffs have standing under Section 36-2-28.1 and next consider whether Plaintiffs have standing under the UPA.

**1. Plaintiffs have standing to sue under Section 36-2-28.1**

{36} Guadalupe challenges Plaintiffs' standing under Section 36-2-28.1. This statute, enacted in 2011, replaces the former criminal prohibition against the unauthorized practice of law with a private right of action. *See* 2011 N.M. Laws, ch. 107 (enacting Section 36-2-28.1 and repealing NMSA 1978, Section 36-2-28 (1925),

20

which allowed for the imposition of up to a $500 fine, imprisonment not to exceed six months, or both for a violation of Section 36-2-27). Plaintiffs' claim relies on Subsection (B) of Section 36-2-28.1, which provides,

> A person who suffers a loss of money or other property as a result of an unauthorized practice of law in violation of Section 36-2-27 NMSA 1978 may bring an action for the greater of actual damages or one thousand dollars ($1,000) and for the restitution of any money or property received by the alleged violator, provided that if the court finds that the alleged violator willfully engaged in the unauthorized practice of law, the court may award up to three times the actual damages or three thousand dollars ($3,000), whichever is greater.

*See also* § 36-2-28.1(C) (providing for recovery of attorney fees and costs). We consider whether Plaintiffs have alleged an injury in fact under Section 36-2-28.1 before considering whether Plaintiffs' claims are within the statute's zone of interest.

**a.    Plaintiffs have alleged an injury in fact under Section 36-2-28.1**

{37}    Guadalupe contends that Plaintiffs cannot show an injury in fact under Section 36-2-28.1(B). Plaintiffs' complaint alleges that Guadalupe violated Section 36-2-28.1 and Rule 2-107(B)(3), and that Guadalupe willfully engaged in the unauthorized practice of law. Guadalupe suggests, however, that the cause of action provided by Section 36-2-28.1(B) may only be based on a violation of Section 36-2-27, not on a violation of Rule 2-107(B)(3). And, as previously discussed, Guadalupe asserts that Plaintiffs cannot show a violation of Section 36-2-27 because that statute permits nonattorneys to practice law in magistrate court.

{38}     Guadalupe thus premises its challenge to Plaintiffs' standing on its contention that it did not engage in the unauthorized practice of law. Consistent with our analysis above, we reject this premise. We acknowledge that the plain language of Section 36-2-28.1(B) contemplates that a plaintiff's injury will be based on a violation of Section 36-2-27. However, as we explained earlier, this Court has the power to regulate the practice of law, and, using this power, we have construed and limited the magistrate-court language in Section 36-2-27 to operate harmoniously with this Court's rules addressing the unauthorized practice of law. *See Norvell*, 1973-NMSC-087, ¶¶ 26-27; *Rivera*, 2012-NMSC-003, ¶ 9.

{39}     The Legislature enacted Section 36-2-28.1 in 2011, long after this Court limited Section 36-2-27's magistrate-court language in *Norvell*. "We presume that the Legislature is well informed regarding existing statutory and common law and does not intend to enact a nullity." *Benavidez v. Sierra Blanca Motors*, 1996-NMSC-045, ¶ 18, 122 N.M. 209, 922 P.2d 1205. Accordingly, we conclude that the Legislature intended Section 36-2-28.1(B) to support a claim grounded on a violation of Section 36-2-27 as construed and limited by this Court's rules addressing the unauthorized practice of law. We do not suggest that our rules themselves provide Plaintiffs with a private right of action. Rather, we explain only

22

that Plaintiffs may allege an injury in fact under Section 36-2-28.1(B) by claiming that Guadalupe violated Rule 2-107(B)(3).

{40} We similarly reject Guadalupe's argument that Plaintiffs were required to specifically reference Section 36-2-27 or to use any other special language in their complaint. In *Zamora v. St. Vincent Hospital*, 2014-NMSC-035, ¶ 10, 335 P.3d 1243, this Court rejected "hypertechnical" pleading requirements. All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 1-008(A)(2) NMRA. Irrespective of the language of Plaintiffs' complaint, Guadalupe has demonstrated that it understands the allegations and claims against it. At this stage of the proceedings, nothing more is required. *See Zamora*, 2014-NMSC-035, ¶¶ 10, 14 (concluding that, although the complaint "fails to name a theory of vicarious liability, . . . the reality is that New Mexico's pleading standards require no more detail than [the plaintiff] provided").

**b. Plaintiffs are within the zone of interest of Section 36-2-28.1**

{41} We next consider whether the Plaintiffs' interests are within the zone of interest protected by Section 36-2-28.1. We infer that the district court determined Plaintiffs lacked standing because the court concluded that any unauthorized legal services were provided to Guadalupe and not to Plaintiffs. We understand the district court as reasoning that Section 36-2-28.1(B)'s zone of interest only extends to the

client or recipient of the challenged unauthorized legal services. Although Guadalupe does not seek to defend the district court's reasoning in this appeal, we nevertheless address this reasoning to resolve any doubt that our courts have jurisdiction over Plaintiffs' claims. *See Deutsche Bank*, 2016-NMSC-013, ¶ 11 ("[W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action." (internal quotation marks and citation omitted)); *see also* Rule 12-321(B)(1) NMRA ("Subject matter jurisdiction of the trial or appellate court may be raised at any time.").

{42}    We agree with the Court of Appeals that the plain language of the statute contemplates that any party harmed by the unauthorized practice of law may bring a claim under Section 36-2-28.1(B). *See Salas*, A-1-CA-39021, mem. op. ¶ 11. Section 36-2-28.1(B) provides, "A person who suffers a loss of money or other property as a result of an unauthorized practice of law . . . may bring an action." By its plain terms, the statute requires only that a plaintiff incurred damages as a result of the defendant's unauthorized practice of law to support a claim. The statute does not limit the remedy to the client or recipient of the unauthorized legal services. "We use the plain language of the statute as the primary indicator of legislative intent." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 (brackets, internal

quotation marks, and citation omitted). Moreover, we have long recognized that confining the practice of law to licensed attorneys protects the public from risks associated with unqualified and unsupervised practitioners. *See, e.g., Guardian Abstract*, 1978-NMSC-016, ¶ 21 ("The confining of law practice to a licensed bar to protect the public is of ancient origin and is of the utmost importance in today's complicated society."). Given our abiding recognition of the public risks posed by the unauthorized practice of law, we conclude the Legislature intended Section 36-2-28.1(B) to provide a civil remedy to any person who is injured in fact by a defendant's unauthorized practice of law. Because Plaintiffs claim that they suffered direct injuries as a result of Guadalupe's unauthorized practice of law, Plaintiffs claims fall within the zone of interest protected by Section 36-2-28.1.

**2.     Plaintiffs have standing to sue Guadalupe under the UPA**

{43}     We next address Guadalupe's challenges to Plaintiffs' standing under the UPA. We have explained that the standing inquiry with respect to a statute is similar to the inquiry of whether the plaintiff has asserted a cause of action. *See Gandydancer*, 2019-NMSC-021, ¶ 8; *Key*, 1996-NMSC-038, ¶ 11. To determine whether Plaintiffs have alleged an injury in fact, we therefore consider whether Plaintiffs have stated a claim under the UPA. We then address whether Plaintiffs' interests are arguably within the zone of interest protected by the UPA.

25

### a.  Plaintiffs alleged an injury in fact under the UPA

{44}  Section 57-12-10(B) provides a private cause of action for "[a]ny person who suffers any loss of money or property . . . as a result of any employment by another person of a method, act or practice declared unlawful by the [UPA.]" *See also* § 57-12-10(E) (providing for an award of damages in a class action under the UPA). The UPA further declares, "Unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." Section 57-12-3.

{45}  For its challenge to Plaintiffs' UPA claim, Guadalupe again relies on its steadfast assertion that Section 36-2-27 authorized it to appear in magistrate court through nonattorneys. Guadalupe reasons that its conduct was lawful under Section 36-2-27 and thus cannot be prohibited as an unfair or unconscionable trade practice under Section 57-12-3. Guadalupe thus suggests that Plaintiffs failed to allege an unfair trade practice as defined by Section 57-12-2(D) or an unconscionable trade practice as defined by Section 57-12-2(E).

{46}  Guadalupe's arguments lack merit. As previously discussed, we have construed and limited Section 36-2-27 to operate harmoniously with our rules and case law regulating the practice of law. *See Norvell*, 1973-NMSC-087, ¶¶ 26-27; *Rivera*, 2012-NMSC-003, ¶ 9. We therefore reject Guadalupe's suggestion that its alleged conduct was lawful under Section 36-2-27. Thus, to determine whether

Plaintiffs have pleaded an injury in fact under the UPA, we need only consider whether Guadalupe's conduct may amount to an unfair or unconscionable trade practice as defined by Section 57-12-2(D) or (E).

{47} Plaintiffs have alleged facts that, if proven, establish that Guadalupe engaged in an unfair trade practice under Section 57-12-2(D), (D)(14), and (D)(15). As relevant to Plaintiffs' claims, the UPA defines an unfair trade practice as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with . . . the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." Section 57-12-2(D). Section 57-12-2(D) identifies a list of example unfair trade practices, including, as relevant to Plaintiffs' claims, "using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive," and "stating that a transaction involves rights, remedies or obligations that it does not involve." Section 57-12-2(D)(14), (15).

{48} "'The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services.'" *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 166 P.3d 1091 (quoting *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 125

27

N.M. 748, 965 P.2d 332). A plaintiff seeking to establish an unfair trade practices claim must show that (1) the defendant made a representation "that was either false or misleading," (2) "the false or misleading representation must have been knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts," (3) the false or misleading representation "must have occurred in the regular course of the [defendant's] trade or commerce," and (4) the representation was "of the type that may, tends to or does, deceive or mislead any person." *Ashlock v. Sunwest Bank of Roswell, N.A.*, 1988-NMSC-026, ¶ 4, 107 N.M. 100, 753 P.2d 346 (omission in original) (internal quotation marks and citation omitted), *overruled on other grounds by Gonzales v. Surgidev Corp.*, 1995-NMSC-036, ¶ 16, 120 N.M. 133, 899 P.2d 576. A representation is "'knowingly made'" when the "party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 17, 112 N.M. 97, 811 P.2d 1308.

{49} Plaintiffs alleged in relevant part that Guadalupe filed and pursued collection actions against Plaintiffs using employees who were not authorized to practice law; that Guadalupe used the existence of these actions to obtain full payments, payment

28

arrangements, or judgments against Plaintiffs and, in some cases, enforce judgments through garnishment or other court processes; and that Guadalupe acted willfully. If proven, these facts readily support a claim for unfair trade practices. Based on these allegations, a jury or other factfinder could determine that (1) Guadalupe made false or misleading representations that its employees were authorized to practice law, (2) Guadalupe knowingly made these misrepresentations when extending credit to or collecting debts from Plaintiffs, (3) Guadalupe made these misrepresentations in the course of its trade or commerce as a credit union, and (4) Guadalupe's misrepresentations were of the type that may, tend to, or do mislead. *See Ashlock*, 1988-NMSC-026, ¶ 4 (listing these four elements of an unfair trade practices claim). For purposes of this motion to dismiss, we also conclude that Guadalupe falsely representing to Plaintiffs that its employees were authorized to practice law may amount to ambiguity as to a "material fact" tending to deceive with respect to Section 57-12-2(D)(14), or may have suggested that a "transaction involve[d] rights, remedies or obligations that it [did] not involve" with respect to Section 57-12-2(D)(15). *Cf. Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 28, 132 N.M. 459, 50 P.3d 554 (concluding that a bank's failure to concede clear legal liability fell within the definition of an unfair trade practice under Section 57-12-2(D)(15)).

{50} Plaintiffs have also sufficiently alleged that Guadalupe's conduct amounted to an unconscionable trade practice under Section 57-12-2(E)(1). The UPA defines an unconscionable trade practice, in relevant part, as "an act or practice . . . in the extension of credit or in the collection of debts that to a person's detriment . . . takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree." Section 57-12-2(E)(1). In determining whether a plaintiff was taken advantage of to a grossly unfair degree, we evaluate the factual circumstances surrounding the transaction, including the defendant's pattern of conduct and the plaintiff's characteristics. *See State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 25, 329 P.3d 658 ("We consider whether borrowers were taken advantage of to a grossly unfair degree by looking at practices in the aggregate, as well as the borrowers' characteristics."); *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 23, 146 N.M. 256, 208 P.3d 901 (explaining that, for an analogous procedural unconscionability claim, a court "examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other"). For example, in *B & B Inv. Grp.*, we concluded that several borrowers had proven that a subprime lender engaged in unconscionable trade practices by leveraging the

borrowers' financial distress, exploiting the borrowers' cognitive and behavioral deficits, and offering payday loans with exorbitant interest rates and fees. *See B & B Inv. Grp.*, 2014-NMSC-024, ¶¶ 3-8, 25.

{51} Similar to *B & B Inv. Grp.*, Plaintiffs allege that Guadalupe engaged in a pattern of filing and prosecuting collection actions against them and other unidentified credit union members that took advantage of their lack of knowledge or experience regarding the unauthorized practice of law to a grossly unfair degree. Although we cannot speculate as to what the facts may ultimately show, Plaintiffs' allegations support an unconscionable trade practices claim under Section 57-12-2(E)(1). We therefore conclude that Plaintiffs have alleged a sufficient injury in fact to grant them standing under the UPA.

**b.      Plaintiffs are within the zone of interest protected by the UPA**

{52} Guadalupe also argues that Plaintiffs lack standing because the unauthorized practice of law is not within the zone of interest protected by the UPA. As support for this argument, Guadalupe primarily relies on *Gandydancer*, 2019-NMSC-021. In *Gandydancer*, a construction company sued its competitor for engaging in unfair methods of competition by soliciting contracts from a consumer without disclosing that the competitor was unlicensed to perform the work. *Id.* ¶¶ 2, 4. We held that the construction company did not have a private cause of action under Section 57-12-

31

10(B) because its interests were not within the zone of interest protected by the UPA. *Id.* ¶ 18. Guadalupe compares the unlicensed construction work at issue in *Gandydancer* to the allegations of unauthorized legal practice at issue here, suggesting that the unauthorized practice of law similarly falls outside the interests protected by the UPA.

{53} Guadalupe misreads *Gandydancer*. Although the claims in *Gandydancer* rested in part on the competitor's provision of unlicensed construction services, the competitor's unlicensed status was not material to the issue we considered on appeal. Rather, in *Gandydancer*, we considered whether the UPA "supports a cause of action for competitive injury." *Id.* ¶ 1; *see also id.* ¶ 8 (framing the question presented as "whether the UPA creates a cause of action to recover lost profits damages from a competitor"). Although we acknowledged that the UPA appears to confer standing broadly on "any person meeting the minimum requirement of injury," *id.* ¶ 18, we concluded the Legislature "intended to remove competitive injury claims from the protected zone of interests." *Id.* ¶¶ 19-20. Looking at legislative history, we noted that the Legislature had removed the phrase "unfair methods of competition" from the UPA. *Id.* ¶ 19. We further recognized that the UPA is fundamentally a consumer protection statute. *Id.* ¶ 24. Allowing a construction company to recover lost profits from its competitor could undermine consumer protection because the company's

lawsuit could render the competitor insolvent and thus judgment-proof against a consumer's claims. *See id.* ¶ 26. We therefore declined to expand the UPA's zone of interest beyond "protecting innocent consumers" to also protecting a company from lost profits. *Id.* ¶ 28.

{54}     *Gandydancer* is inapposite. Unlike *Gandydancer*, Plaintiffs have not sued Guadalupe for lost profits resulting from a competitive injury. Rather, Plaintiffs allege that Guadalupe extended credit to or collected debts from Plaintiffs, and that they were injured by Guadalupe's unfair or unconscionable trade practices in connection therewith. We construe the UPA liberally to ensure the protection of innocent consumers. *B & B Inv. Grp.*, 2014-NMSC-024, ¶ 48; *Gandydancer*, 2019-NMSC-021, ¶ 24. As consumers allegedly harmed by Guadalupe's unfair and unconscionable trade practices, Plaintiffs' claims readily fall within the zone of interests protected by the UPA.

{55}     For similar reasons, we disagree with the district court that Plaintiffs' claims are outside of the zone of interests protected by the UPA simply because Guadalupe's employees only represented Guadalupe's legal interests in the collection lawsuits, not Plaintiffs' legal interests. Plaintiffs allege they are consumers of Guadalupe's credit union services, not Guadalupe's legal services. Specifically, Plaintiffs claim that Guadalupe extended credit to or collected debts from Plaintiffs

33

while falsely representing that its employees were authorized to practice law or while taking grossly unfair advantage of Plaintiffs' lack of knowledge or experience regarding the unauthorized practice of law. These alleged transactions—the direct extension of credit to or collection of debts from Plaintiffs—are plainly within the ambit of the UPA. *See* § 57-12-2(D), (E); § 57-12-3.

{56} In this regard, our reasoning also differs from that of the Court of Appeals, which concluded in response to Guadalupe's challenge to Plaintiffs' standing that a UPA claim was not "limited to claims by the party to whom the legal services were provided." *Salas*, A-1-CA-39021, mem. op. ¶ 12. Again, Plaintiffs claim that Guadalupe used unfair or unconscionable trade practices while directly providing credit services to or collecting debts from Plaintiffs. As such, we need not consider whether a UPA claim challenging the provision of legal services is limited to the party to whom the legal services are provided.

{57} Guadalupe also asserts that Plaintiffs' claims are outside of the UPA's protected zone of interest because permitting Plaintiffs to recover for the unauthorized practice of law under the UPA would displace the remedy provided in Section 36-2-28.1 for such unauthorized practice. In *Gandydancer*, 2019-NMSC-021, ¶¶ 25-28, we explained that construing the UPA to permit the construction company's recovery for competitive injury would conflict with another statute

34

providing a remedy to consumers of unlicensed contracting services, as a defendant could essentially be "rendered bankrupt or judgment proof" and a consumer "could be effectively precluded from recovering damages" for the defendant's unlicensed construction services. *Id.* ¶ 26. However, under the circumstances presented, we see no tension between the remedy provided by Section 36-2-28.1 and the remedy provided by the UPA. The remedies afforded by the two statutes are not exclusive. *See* § 36-2-28.1(D) (stating that the remedy provided therein "is in addition to other remedies available at law or equity"); § 57-12-10(D) ("The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state."). And we fail to see how, generally, the existence of an alternative remedy in Section 36-2-28.1 undermines the UPA's primary purpose of consumer protection. *Cf. Gandydancer*, 2019-NMSC-021, ¶ 27 (explaining that allowing competitors to recover for competitive injury "thwarts [the UPA's] primary purpose of protecting innocent consumers"). As previously mentioned, Plaintiffs allege they are innocent consumers of Guadalupe's credit union services. Permitting Plaintiffs to recover for Guadalupe's alleged unfair and unconscionable trade practices in connection with those services promotes the purpose of the UPA.

{58}   Guadalupe has not otherwise shown that the Legislature intended to exclude unfair or unconscionable trade practices based on the unauthorized practice of law from the zone of interest protected by the UPA. And we do not see any other sign that the UPA excludes Plaintiffs' claims solely because Guadalupe's alleged misrepresentations and unconscionable practices relate to the authority of its employees to practice law. Accordingly, we conclude that Plaintiffs' interests are arguably within the zone of interest protected by the UPA.

## IV.   CONCLUSION

{59}   Plaintiffs sufficiently alleged that Guadalupe engaged in the unauthorized practice of law by filing and prosecuting debt collection actions against Plaintiffs in magistrate court through nonattorneys. Based on these allegations, Plaintiffs have standing to bring claims challenging Guadalupe's conduct under Section 36-2-28.1 and the UPA. We therefore affirm the Court of Appeals, reverse the district court, and remand to the district court with instructions to vacate its order of dismissal and to reinstate Plaintiffs' complaint in its entirety.

{60}   **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

_____
**DAVID K. THOMSON, Chief Justice**


_____
**C. SHANNON BACON, Justice**


_____
**BRIANA H. ZAMORA, Justice**


_____
**JAMES A. NOEL, Judge**
**Sitting by designation**